

Office of Inspector General | United States Postal Service

## Audit Report

# Accuracy of Grievances in the Grievance and Arbitration Tracking System – Houston District

Report Number HR-AR-18-009 | September 11, 2018



# Table of Contents

Cover

Highlights ...................................................................................................................................................1
   Objective ................................................................................................................................................1
   What the OIG Found ............................................................................................................................1
   What the OIG Recommended ............................................................................................................1

Transmittal Letter ....................................................................................................................................3

Results ........................................................................................................................................................4
   Introduction/Objective ........................................................................................................................4
   Background ............................................................................................................................................4
   Finding #1: Non-Grievance Payments ..............................................................................................4
      Recommendation #1 ......................................................................................................................6
   Finding #2: Controls Over Grievances ..............................................................................................6
      Creating and Modifying Grievance Transactions .....................................................................6
      Review of Informal Payments Over $500 ....................................................................................7
      Grievance Number Format for After 5 Payments ......................................................................7
      Issue Codes ........................................................................................................................................8
      Recommendation #2 ......................................................................................................................8
      Recommendation #3 ......................................................................................................................8
      Recommendation #4 ......................................................................................................................8
   Finding #3: Unsupported Grievance Payments ..............................................................................8
      Recommendation #5 ......................................................................................................................9
   Management's Comments ..................................................................................................................9
   Evaluation of Management's Comments .......................................................................................10

Appendices .............................................................................................................................................12
   Appendix A: Additional Information .............................................................................................13
      Scope and Methodology ..............................................................................................................13
      Prior Audit Coverage .....................................................................................................................13
   Appendix B: Management's Comments .........................................................................................14

Contact Information .............................................................................................................................18

# Highlights

## Objective

Our objective was to assess the accuracy of grievances recorded in the Grievance and Arbitration Tracking System (GATS) for the Houston District.

The U.S. Postal Service defines a grievance as a dispute, difference or disagreement between parties or a complaint lodged by a party regarding wages, hours or conditions of employment. The grievance process allows employees to discuss and informally settle grievances with their immediate supervisor; however, if there is no resolution, the union can file a formal grievance. While informal grievances do not require supporting documentation, formal grievances must have a copy of the appeal and applicable Postal Service forms. Both types of grievances are entered in GATS, which tracks the steps in the grievance process.

Between July 2015 and May 2017, the Houston District processed 161,820 grievance payments totaling over $14 million, which was the highest of all 67 Postal Service districts. We reviewed a statistical sample of 187 grievance payments, which consisted of 172 informal grievance payments (totaling $31,234) and 15 formal grievance payments (totaling $2,156).

## What the OIG Found

Grievances recorded in GATS for the Houston District were not accurate. Specifically, we identified ▮▮▮▮▮▮ payments totaling ▮▮▮▮▮▮▮▮ made to carriers delivering mail after 5:00 P.M. (also referred to as After 5 payments) improperly processed in GATS as informal grievances, instead of utilizing available functionality in the Time and Attendance Collection System (TACS).

In addition, controls over the grievance payment process were not designed to effectively ensure that appropriate user access limits were assigned, adequate management oversight was conducted, the standard grievance number format was used, and correct issue codes were entered.

Lastly, the Houston District did not maintain complete and accurate supporting documentation for 76 of the 187 statistically sampled grievance payments (or 41 percent).

These conditions occurred because:

- District management decided to process After 5 payments in GATS to facilitate managing and tracking payments.

- GATS does not allow user access limitation options for grievance transactions; higher-level managers were not aware of grievance payment activity that exceeded the district's $500 threshold; managers and supervisors were unaware of the required standard grievance number format; and the Labor Relations manager did not review GATS records to detect grievances without issue codes.

- Managers did not review grievances to ensure they were complete and accurately supported, including the rationale for payment, unless supervisors directly notified them to review payment activity.

By processing After 5 payments through GATS, the Postal Service continues to incur costs associated with manually processing these payments. There is also an increased risk of errors, duplicate payments, and overstatement of grievance activity. For example, grievance payments for the Houston District were overstated by ▮▮▮▮▮▮ from July 2015 through May 2017.

Additionally, ineffective GATS controls and incomplete supporting documentation for grievance payments increases the risk of improper grievance payments. There were 1,050 duplicate payments totaling $71,385 due to incorrect usage of the grievance number format for After 5 payments. We also identified over $5.7 million in unsupported questioned costs for informal grievance payments made without supporting documentation from July 2015 through May 2017.

## What the OIG Recommended

We recommended management:

- Modify TACS to leverage automation when processing After 5 payments or revise the policy regarding the use of GATS,

- Limit user access in GATS to levels appropriate for user oversight responsibilities,

- Establish a process to ensure managers review informal grievance payments exceeding $500,

- Recover duplicate payments that were made due to the incorrect number format, and

- Provide GATS refresher training regarding information and documentation practices.

# Transmittal Letter



OFFICE OF INSPECTOR GENERAL
UNITED STATES POSTAL SERVICE

September 11, 2018

**MEMORANDUM FOR:**   DAVID W. CAMP
HOUSTON DISTRICT MANAGER

CARA GREENE
ACTING VICE PRESIDENT CONTROLLER

DOUGLAS A. TULINO
VICE PRESIDENT LABOR RELATIONS



E-Signed by Charles Turley
VERIFY authenticity with eSign Desktop

**FROM:**   Charles L. Turley
Deputy Assistant Inspector General
  for Supply Management & Human Resources

**SUBJECT:**   Audit Report – Accuracy of Grievances in the
Grievance and Arbitration Tracking System –
Houston District (Report Number HR-AR-18-009)

This report presents the results of our audit of the Accuracy of Grievances in the Grievance and Arbitration Tracking System – Houston District (Project Number 18SMG015HR000).

We appreciate the cooperation and courtesies provided by your staff. If you have any questions or need additional information, please contact Lucine Willis, Director, Human Resources and Support, or me at 703-248-2100.

Attachment

cc:  Postmaster General
    Corporate Audit Response Management

# Results

## Introduction/Objective

This report presents the results of our self-initiated audit of the Accuracy of Grievances in the Grievance and Arbitration Tracking System (GATS) – Houston District (Project Number 18SMG015HR000). Our objective was to assess the accuracy of grievances recorded in GATS for the Houston District.

From July 2015 to May 2017, the U.S. Postal Service processed 295,731 grievances in GATS totaling about $230 million in payments.[1] During this period, the Houston District processed 161,820 grievance payments totaling over $14 million, which was the highest of all 67 Postal Service districts (see Figure 1). We reviewed a statistical sample of 187 grievance payments, which consisted of 172 informal payments (totaling $31,234) and 15 formal payments (totaling $2,156).

> *"During this period, the Houston District processed 161,820 grievance payments totaling over $14 million, which was the highest of all 67 Postal Service districts."*

## Background

The Postal Service defines a grievance as a dispute, difference, or disagreement between parties or a complaint lodged by a party regarding wages, hours or conditions of employment. A grievance includes, but is not limited to, an employee or union complaint involving the interpretation or application of or compliance with a collective bargaining agreement or any local memorandum of understanding not in conflict with the agreements.[2] Monetary payments to employees are commonly used to resolve grievances.

The Postal Service's grievance process allows bargaining unit employees who feel aggrieved to discuss issues with their immediate supervisor. The supervisor has the authority to settle grievances at any time; this part of the process is referred to as the informal grievance step. However, if there is no resolution, the union can file a formal grievance. Appeals of unresolved grievances go to arbitration, where an arbitrator resolves the grievance through a binding decision. GATS is used to maintain accountability and documentation to support grievance payments.[3]

## Finding #1: Non-Grievance Payments

From July 2015 to May 2017, the Houston District processed over $14 million in grievance payments through GATS. Of this amount, ▮▮▮▮▮▮▮ (▮▮▮▮▮▮▮) in payments were made to carriers delivering mail after 5:00 P.M. (also referred to as After 5 payments) and were not associated with a grievance, but processed as informal grievances (see Table 1). These payments were established in accordance with the Violation of the Five O'clock Window agreement[4] between Houston District management and the National Association of Letter Carriers, in which district management agreed to a contractually obligated supplemental hourly rate for carriers delivering mail after 5:00 P.M.

**Figure 1. Total Grievance Payments by District**



Source: GATS-Application System Reporting (ASR).

---

1  Limited to the 67 Postal Service districts.
2  Handbook EL-901, *Agreement between United States Postal Service and National Association of Letter Carriers*, AFL-CIO 2016-2019, Article 15: Grievance-Arbitration Procedure, page 64, effective May 21, 2016.
3  Headquarters Labor Relations Memorandum, *GATS Internal Controls*, December 31, 2013.
4  This agreement was signed February 10, 1993.



Managers and supervisors manually process After 5 payments* in GATS **every pay period** by:

- Retrieving 113 TACS† reports representing facilities with carriers eligible for After 5 payments.
- Processing each report through a customized spreadsheet to calculate the amounts due.
- Entering up to 3,075 carrier names and payment amounts due into GATS.
- Verifying the accuracy of the total payment in GATS against the amount due from the spreadsheet file.
- Submitting the grievance through GATS, which is ultimately transmitted to payroll for payment.

\* Payments made by the Postal Service to carriers delivering mail after 5 pm.
† Time and Attendance Collection System.

### Table 1. After 5 Payments

| Year[5] | Payments | Amount |
|---|---|---|
| 2015 | ██████ | ██████ |
| 2016 | ██████ | ██████ |
| 2017 | ██████ | ██████ |
| Total | ██████ | ██████ |

Source: GATS-ASR.

The Postal Service defines a grievance as a dispute, difference or disagreement between parties; or a complaint lodged by a party regarding wages, hours, or conditions of employment. After 5 payments should not have been processed through GATS since they do not meet the Postal Service's definition of a grievance, but rather are contractually obligated.

Previous responsibility for processing After 5 payments was designated to the Payroll Processing Branch (payroll) in Eagan, MN[6] where these payments were processed as payroll adjustments. Currently, managers and supervisors manually process After 5 payments in GATS every pay period by:

1. Retrieving 113 TACS reports representing facilities with carriers eligible for After 5 payments.
2. Processing each report through a customized Microsoft Excel Workbook to calculate the amounts due.
3. Entering up to 3,075[7] carrier names and payment amounts due into GATS.
4. Verifying the accuracy of the total payment in GATS against the amount due from the Excel file.
5. Submitting the grievance through GATS, which is ultimately transmitted to payroll for payment.

---

5  For 2015, the data represents July 1 through September 30, 2015. For 2016, it represents October 1, 2015, to September 30, 2016. For 2017, it represents October 1, 2016 to May 31, 2017.
6  Memorandum for Managers, Customer Services, Payment of Penalty for City Carriers Delivering Mail After 5 p.m., revision, dated August 24, 1998.
7  According to WEB Complement Information System, this was the number of city carriers in the Houston District as of June 21, 2018.

However, the Postal Service can process hours worked under specific circumstances as special payments using the Time and Attendance Collection System (TACS), a web-based system that automates time and attendance processes for all Postal Service offices. Examples of special payments to compensate employees using TACS include:

- Sunday premium pay, which is extra compensation at the rate of 25 percent of an eligible employee's hourly rate for hours worked between midnight on Saturday and midnight on Sunday.[8]

- Holiday work pay, which is the basic hourly straight time rate paid for hours worked on a holiday in addition to their holiday leave.

GATS tracks the steps of the grievance and arbitration process, including appeals, management decisions, and processing of grievance payments.[9] The information in GATS allows management to review and research grievance activity.[10]

According to the district Human Resources manager, After 5 payments were processed in GATS as it allowed them to easily manage and track payments by carrier and finance number. However, this process is labor intensive and not the most efficient way based on the functionality of other Postal Service systems. After 5 payments could be treated as special payments, as TACS has the functionality to process these payments automatically and more efficiently and cost effectively.

By processing After 5 payments through GATS, grievance activity was overstated by ▮▮▮▮▮▮. If properly recorded, the Houston District would rank 17th in the amount of grievance payments made compared to the other 66 districts. Implementing an automated process for After 5 payments could be more efficient and eliminate errors and duplicate payments. Additionally, the Postal Service could eliminate the effort required by managers and supervisors to manually process After 5 payments in GATS.

> "GATS tracks the steps of the grievance and arbitration process, including appeals, management decisions, and processing of grievance payments."

### Recommendation #1
The **Houston District Manager**, in coordination with the **Vice President Controller** and the **Vice President Labor Relations**, modify the Time and Attendance Collection System to leverage automation when processing After 5 payments, or revise the policy regarding the use of Grievance and Arbitration Tracking System to include processing and separately reporting non-grievance payments.

## Finding #2: Controls Over Grievances

Controls over the grievance payment process were not designed to effectively ensure appropriate user access limits were assigned, adequate management oversight was conducted, the standard grievance number format was used, and correct issue codes were entered.

## Creating and Modifying Grievance Transactions

GATS users in the Houston District can create grievance transactions for all finance numbers in the district and modify transactions created by other district users. For example, during a walkthrough of GATS, we observed a Labor Relations specialist add a payment to a grievance transaction that another user created.

A user should only have access to modify a transaction they created or within their user access hierarchy.[11] Additionally, appropriate system access safeguards against unauthorized access and improper modification.[12]

---

8  Handbook EL-912, *Agreement between United States Postal Service and American Postal Workers Union, AFL-CIO 2015-2018*, Article 8, Section 6.
9  Enterprise Information Repository is the official central repository of information about Postal Service software applications and application modules.
10  Headquarters Labor Relations Memorandum, *GATS Internal Controls*, December 31, 2013.
11  Government Accountability Office (GAO), *Standards for Internal Controls in the Federal Government*, GAO-14-704G, Principle 10.03, page 48, September 2014.
12  GAO-14-704G, Principle 11.11, page 54.

This condition occurred because GATS does not allow user access limitation options for grievance transactions. Additionally, there are no compensating manual controls implemented to limit user access to desired levels.

When user access controls are not adequate, there is an increased risk of fictitious grievance transactions and improper payments.

## Review of Informal Payments Over $500

Higher-level managers did not consistently review informal grievance payments that exceeded $500, as required. Between July 2015 and May 2017, there were 683 informal grievance payments over $500 totaling $1,073,245 without documented confirmation that the higher-level manager review occurred. These payments ranged from $501 to $7,500.

In February 2013, the Houston District Manager established a policy that required a supervisor's manager to review informal grievance payments exceeding $500 prior to payment.[13] The policy was implemented to help ensure consultation with senior management occurred to validate whether the settlement is fair and equitable, with consideration toward the financial obligation of the Postal Service; however, the policy was silent on the process to record or document the additional review occurred.

Higher-level managers may not be conducting reviews because without notification from supervisors, they are unaware of these payments. GATS does not automatically notify managers about grievance payment activity. However, GATS allows users to set email alerts on 12 different attributes, but this feature is not used in the current process.

By not conducting the higher-level review of informal grievance payments exceeding $500, management is not in compliance with the policy; therefore, not meeting the intent of the additional review to ensure payments exceeding $500 are appropriate. The lack of this review increases the risk of improper grievance payments being administered without detection.

## Grievance Number Format for After 5 Payments

Supervisors did not consistently use the standard grievance number format when entering After 5 payments in GATS. The standard grievance number format is **AFTER5PPXXYYYY**, where **XX** represents two digits for the pay period and **YYYY** represents the calendar year.[14] Between July 2015 and May 2017, 2,193 of 3,493 After 5 grievance transactions (or 63 percent) did not follow the standard grievance number format.

Houston District Labor Relations personnel created the standard grievance number format for After 5 payments as a control to mitigate the entry of duplicate payments. This guidance was communicated to managers and supervisors via email with an attached Microsoft PowerPoint presentation; however, no other guidance was published to reflect the required use of this format. In addition, managers and supervisors were unaware of the required standard grievance number format because they received limited training or guidance for creating After 5 payments in GATS.

> *"As a result of not using the standard grievance number format for After 5 payments, we identified 43 duplicate grievances."*

As a result of not using the standard grievance number format for After 5 payments, we identified 43 duplicate grievances. These grievances represent 1,050 duplicate payments, totaling $71,385, to which employees were not entitled.

---

13  Houston District Memorandum, February 6, 2013.
14  Postal Service PowerPoint Presentation, After 5 Payments, undated.

During the audit, Labor Relations personnel took corrective action by reiterating the standard grievance number format for After 5 payments. They sent emails to managers and supervisors in May and July 2018 that included the After 5 Payments instructional Microsoft PowerPoint and emphasized the need to use the standard format to avoid duplicate payments. Therefore, we are not making a recommendation for this area.

## Issue Codes

Users improperly created grievances in GATS by entering the grievance without selecting an issue code. From July 2015 through May 2017, there were 247 grievances in the Southern Area totaling $209,371 that were missing issue codes. Of the 12 districts in the area, Houston had the highest number with 45 (18 percent) grievances missing issue codes, representing $51,246 (24 percent) in payments.

Issue codes are required for categorizing the grievance type and are necessary for management to track and monitor grievance activities, including identifying grievance trends. Managers and supervisors responsible for creating grievance entries in GATS are required to select the appropriate issue code for the dispute.[15] In addition, Labor Relations managers should conduct periodic reviews in their areas of responsibility to ensure grievance payments are valid, accurate, and properly allocated.[16]

This condition occurred because the Houston District Labor Relations Manager did not review GATS records to detect grievances without an issue code. As a result of the audit, the GATS system administrator investigated and found GATS allowed users to bypass warning messages and process grievances without selecting an issue code. The administrator took corrective action, which resolved the issue for all GATS users nationwide; therefore, we are not making a recommendation for this area.

> **Recommendation #2**
> The **Houston District Manager**, in coordination with the **Vice President Labor Relations**, limit user access in GATS to levels appropriate for user oversight responsibilities via automated controls, or compensating manual controls.
>
> **Recommendation #3**
> The **Houston District Manager** establish a process to ensure compliance with the requirement for higher-level manager review of informal grievance payments exceeding $500.
>
> **Recommendation #4**
> The **Houston District Manager** initiate actions to recover the $71,385 in duplicate After 5 payments identified.

## Finding #3: Unsupported Grievance Payments

Management did not consistently maintain complete and/or accurate support for grievance payments. We reviewed a statistical sample of 187 grievance payments and found that 76 did not have complete and/or accurate supporting documentation (or 65,766 grievance payments totaling over $5.7 million projected over the universe of 161,820 total grievance payments). Specifically:

- There were 172 informal grievance payments, of which 72 (42 percent) totaling $23,751 had incomplete decision letters. The decision letters did not contain all the required information, such as rationale for payment, payee name, and amount due.

    - Six (3 percent) informal grievance payments totaling $299 were incorrectly charged to overtime issue codes instead of the appropriate After 5 payment issue code.

---

15  Postal Service Blue Pages, *Labor Relations Instructions for GATS Entries*.
16  Headquarters Labor Relations Memorandum, *GATS Internal Controls*, December 31, 2013.

Accuracy of Grievances in the Grievance and Arbitration Tracking System – Houston District
Report Number HR-AR-18-009

8

- There were 15 formal grievance payments, of which four (27 percent) totaling $567 were missing the required Postal Service grievance form.[17]

The decision letter is automatically generated based on the data users enter in GATS. Informal grievances are significant because they do not require supporting documentation other than what is entered in GATS and ultimately populated on the decision letter. When users do not enter complete information, grievance payments are missing critical information to support the transaction, such as the rationale for the payment.

Per policy, managers and supervisors are required to conduct periodic reviews of grievance activity in their area of responsibility to ensure grievance payments are valid, accurate, and properly allocated. They are also required to maintain grievance case files with all necessary information for five years.[18] Informal grievance decision letters must include the issue and timeframe of the dispute, the names and amounts of each payee, and the rationale[19] for the adjustment.[20] Formal grievance files should include a copy of the appeal and applicable Postal Service grievance forms.[21]

Decision letters did not contain all the required information as managers and supervisors indicated they were unaware of what information to include in GATS. This would infer that management is not using the policy as a guide when using GATS to understand what information is required. Per Labor Relations, they did not receive the identified missing grievance forms from the supervisors during the review process. As such, Labor Relations continued the process without having all the required documentation. Labor Relations indicated that for timeliness purposes, they did not follow-up to request the forms from the supervisors.

Incomplete and inaccurate documentation increases the risk of improper and erroneous grievance payments. We identified over $5.7 million in unsupported questioned costs due to grievance payments processed with incomplete decision letters and missing required forms. Additionally, without periodic review of grievance activity, between July 2015 and May 2017, there were 5,006 After 5 payments totaling $318,183 that were processed with incorrect issue codes. If not mitigated, this would increase the risk of future improperly allocated payments.

> *"We identified over $5.7 million in unsupported questioned costs due to grievance payments processed with incomplete decision letters and missing required forms."*

### Recommendation #5
The **Houston District Manager** provide Grievance and Arbitration Tracking System refresher training to supervisors regarding information and documentation practices.

## Management's Comments

Management disagreed with finding 1, recommendations 1 and 2, and the monetary impact; however, management agreed with recommendations 3, 4, and 5. Management did not indicate agreement or disagreement with findings 2 and 3.

Regarding finding 1, management disagreed with the conclusion that payments made to carriers delivering mail after 5 p.m. were improperly processed in GATS and that grievance payments for the Houston District were overstated by $9.2 million from July 2015 through May 2017. Management asserted that After 5 payments are a result of not adhering to an existing local agreement; therefore, any violation of that agreement is properly identified as a grievance

---

17  Postal Service (PS) Form 2608, Grievance Summary – Step 1; PS Form 2609, Grievance Summary – Step 2; PS Form 8190, USPS-NALC Joint Step A Grievance Form; or PS Form 8191, USPS-NRLCA Joint Step 1 Grievance Form.
18  Handbook AS-353, *Guide to Privacy, the Freedom of Information Act, and Records Management, Appendix of Privacy Act System of Records*, January 2018.
19  USPS *GATS Informal Payments Educational User Guide*, September 30, 2008.
20  Headquarters Labor Relations Memorandum, December 31, 2013.
21  Headquarters Labor Relations release, Grievance File Contents, 2010.

and grievance-related payments are authorized through GATS. Thus, these payments are appropriately included in the Houston District grievance payout totals. Management also disagreed with the position that After 5 payments be made using TACS because the functionality is not available in TACS. In addition, since the payments are for grievance-related violations, entering them in GATS is appropriate.

Regarding recommendation 1, management disagreed stating that modifications of national systems, such as TACS, or revision of national policy regarding the use of GATS is not economically feasible or appropriate. TACS is a national application and making a change related to only one district would be cost prohibitive and add unnecessary risk to an aging system.

Regarding recommendation 2, management disagreed stating that there are existing controls built into GATS that limit a user's access consistent with their obligations under collective bargaining agreements. Management further stated that customization features are available to all GATS users to establish and receive automated alerts for grievances in their functional area of responsibility as determined by their access/user role.

Regarding recommendation 3, management stated they will establish a process for review of GATS payments of over $500 by using the GATS alerts function to review payments meeting the established threshold. Management also stated that delegation of this authority will be limited to the review of Informal A settlements exceeding $500 and will be the responsibility of the functional area manager. The target implementation date is October 31, 2018.

Regarding recommendation 4, management stated the Houston District will uphold the provision of the Debt Collection Act. Management will issue letters of demand to all employees who were issued duplicate payments and collection processes will be followed according to Postal Service regulations and the appropriate collective bargaining agreement. The target implementation date is October 31, 2018.

Regarding recommendation 5, management stated the Houston District manager will provide GATS refresher training to supervisors regarding information and documentation practices. The Houston District will also establish a process for ongoing GATS refresher training for supervisors and managers in the Houston District. The target implementation date is October 31, 2018.

Management disagreed with the monetary impact, asserting that the $5.7 million in unsupported questioned costs is predicated on the faulty rationale that any grievance case file missing supporting documentation automatically equates to a questioned cost. Management requested that the statement regarding monetary impact be eliminated or modified.

See Appendix B for management's comments in their entirety.

## Evaluation of Management's Comments

The OIG considers management's comments responsive to recommendations 3, 4, and 5 and planned actions should resolve the issues identified in the report; however, we consider management's comments regarding recommendations 1 and 2 to be nonresponsive.

We disagree with management's assertion that After 5 payments are grievance-related and, therefore, authorized to be processed through GATS. The Postal Service defines a grievance as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. The original dispute may have been resolved through the grievance process, which lead to the negotiation of the local agreement between the Houston District and the National Association of Letter Carriers, establishing requirements related to After 5 payments for carriers. However, subsequent payments made pursuant to this agreement do not meet the Postal Service's definition of a grievance and should not be processed and reported as such. These payments are contractually obligated under the local agreement, not grievance-related; therefore, Houston District grievance payout totals were overstated by including non-grievance activity.

Regarding management's disagreement with recommendation 1, we dispute management's assertion that TACS does not have the functionality to process the After 5 payments. As indicated in the report, this functionality is currently being used to process similar special payments, such as Sunday premium pay and holiday work pay. Furthermore, management did not provide any cost analysis to support their position that modifications are cost prohibitive or add unnecessary risk. In addition to these payments being improperly processed through GATS, this process is labor intensive and inefficient.

Regarding management's disagreement with recommendation 2, we contend that current GATS built-in controls are not sufficient to ensure appropriate system access safeguards against unauthorized access and improper modification. As stated in the report, GATS users in the Houston District can create grievance transactions for all finance numbers in the district and modify transactions created by other district users. Users should only be able to modify a transaction that they created or that is within their user access hierarchy. As current controls may be consistent with obligations under the collective bargaining agreement, management can make the controls more prescriptive to ensure an adequate control environment.

Regarding management's disagreement with the monetary impact of $5.7 million, we identified this amount based on grievance payments without adequate supporting documentation. Per Postal Service policy, informal and formal grievance payments require such support to be maintained in GATS and/or as a hard copy. We identified payments that were processed with incomplete decision letters and missing required forms; therefore, we categorized the monetary impact as unsupported questioned costs.

All recommendations require OIG concurrence before closure. Consequently, the OIG requests written confirmation when corrective actions are completed. Recommendations 3, 4, and 5 should not be closed in the Postal Service's follow-up tracking system until the OIG provides written confirmation that the recommendations can be closed. We view the disagreements on recommendations 1 and 2 as unresolved; therefore, the recommendations will remain open as we coordinate resolution with management.

# Appendices

Click on the appendix title below to navigate to the section content.

Appendix A: Additional Information ........................................................................................................ 13
   Scope and Methodology ...................................................................................................................... 13
   Prior Audit Coverage ........................................................................................................................... 13
Appendix B: Management's Comments ................................................................................................ 14

# Appendix A: Additional Information

## Scope and Methodology

We assessed the accuracy of grievances recorded in GATS in the Houston District from July 2015 through May 2017.

To accomplish our objective, we:

- Interviewed headquarters management, Labor Relations specialists, managers, supervisors, and union officials regarding their responsibilities in the grievance process and their use of GATS.

- Reviewed grievance files for 187 statistically selected GATS payments made from July 2015 through May 2017 to ensure the accuracy and completeness of GATS information.

- Reviewed Postal Service policies and procedures related to payments processed in GATS and documented internal controls used to ensure proper payments.

- Reviewed GATS system and process controls to identify control weaknesses and determined how GATS contains grievance payment records without issue codes.

- Reviewed grievance data to identify duplicate After 5 payments and grievances with incorrect issue codes.

We conducted this performance audit from March through September 2018, in accordance with generally accepted government auditing standards and included such tests of internal controls as we considered necessary under the circumstances. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objective. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objective. We discussed our observations and conclusions with management on August 6, 2018, and included their comments where appropriate.

We assessed the reliability of grievance data by tracing a sample of GATS-related payments to supporting documentation and discussed the data with management officials knowledgeable about the data. We determined that the data were sufficiently reliable for the purposes of this report.

## Prior Audit Coverage

| Report Title | Objective | Report Number | Final Report Date | Monetary Impact (in millions) |
|---|---|---|---|---|
| Accuracy of Grievance Settlement Payments | Assess the accuracy of payments related to the APWU Global Remedy and Kelly Services settlements. | HR-AR-17-003 | 1/27/2017 | $3.5 |
| Grievance Payout Costs in the South Florida District | Determine the cause of high grievance payout costs in the South Florida District. | HR-MA-14-008 | 6/11/2014 | None |
| Grievance Settlements and Payments Follow-Up | Assess internal controls over grievance settlement decisions and payments. | HR-AR-13-008 | 9/27/2013 | $3.4 |

# Appendix B: Management's Comments



UNITED STATES POSTAL SERVICE

August 31, 2018

MONIQUE COLTER
DIRECTOR, AUDIT OPERATIONS

SUBJECT: Accuracy of Grievances in the Grievance and Arbitration Tracking System – Houston District (Report Number HR-AR-18-DRAFT)

This is in response to the above reference audit report dated August 16, 2018. The OIG's objective was to assess the accuracy of grievances recorded in the Grievance and Arbitration Tracking System (GATS) for the Houston District.

In sum, the audit concluded grievances recorded in GATS for the Houston District were improperly processed in GATS and management should have utilized the available functionality in the Time and Attendance Collection system. The OIG identified ▓▓▓▓▓ payments totaling ▓▓▓▓▓▓▓ from July 2015 through May 2017 made to carriers delivering mail after 5 p.m. (also referred to as After 5 payments). They indicated grievance payments were overstated by $9.2 million from July 2015 through May 2017. The OIG reported the Houston District did not maintain complete and accurate supporting documentation for 76 of the 187 statistically sampled grievance payments (or 41 percent). Lastly, the OIG identified over $5.7 million in "unsupported questioned costs" for informal grievance payments made without supporting documentation from July 2015 through May 2017.

We disagree with the conclusion that payments made to carriers delivering mail after 5 p.m. were improperly processed in GATS. Making payments to carriers delivering mail after 5 p.m. is a result of not adhering to an existing local agreement. Therefore, any violation of that agreement is properly identified as a grievance and grievance-related payments are authorized through GATS. In addition, on page 2 of the draft audit report, the payments are described as "grievance payments through GATS."

We disagree with the statement, "…grievance payments for the Houston District were overstated by ▓▓▓▓▓▓ from July 2015 through May 2017." Making payments to carriers delivering mail after 5 p.m. are grievance-related payments as referenced in the proceeding paragraphs and are appropriately included in the Houston District grievance payout totals.

We disagree with the position that these payments should be made "utilizing available functionality in the Time and Attendance Collection [TACS] system." This functionality is not available in TACS. As stated above, payments made for carriers delivering mail after 5 p.m. are grievance-related violations, therefore are appropriately entered in the Grievance and Arbitration Tracking System (GATS).

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260

- 2 -

We disagree with the monetary impact cited in the review. The Postal Service does not agree with the OIG's conclusion of a potential $5.7 million in unsupported questioned costs. The OIG's cited amount is predicated on the faulty rationale that any grievance case file missing supporting documentation automatically equates to a questioned cost. The Postal Service requests that this statement be eliminated or modified.

**Recommendation #1**: The Houston District Manager, in coordination with the Vice President Controller and the Vice President Labor Relations, modify the Time and Attendance Collection System to leverage automation when processing After 5 payments, or revise the policy regarding the use of Grievance and Arbitration Tracking System to include processing and separately reporting non-grievance payments.

**Management Response/Action Plan**: Management disagrees with the recommendation. Modifications of national systems, such as Time and Attendance Collection System (TACS) or revision of national policy regarding the use of GATS is neither economically feasible nor appropriate. TACS is a national application and making a change related to only one District would be cost prohibitive and add unnecessary risk for an aging system. All entries in GATS, including payments made to carriers for delivering mail after 5 p.m. are grievance or grievance-related payments and are authorized to be entered into GATS for payment and tracking purposes. Therefore, revisions to the current policy regarding the use of GATS to segregate non-grievance payments is not appropriate.

**Recommendation #2**: The Houston District Manager, in coordination with the Vice President Labor Relations, limit user access in GATS to levels appropriate for user oversight responsibilities via automated controls, or compensating manual controls.

**Management Response/Action Plan:** Management disagrees with the recommendation because we have existing controls. GATS currently contains built-in controls, and those controls that limit a user's access are consistent with our obligations under our collective bargaining agreements. This limitation is based on the user's functional area of responsibility, specific to the user's role (District, Area, and National). Customization features are available to all GATS users to establish and receive automated alerts for grievances within their functional area of responsibility as determined by their access/user role.

**Recommendation #3**: The Houston District Manager establish a process to ensure compliance with the requirement for higher-level manager review of informal grievance payments exceeding $500.

**Management Response/Action Plan**: Management agrees with the recommendation. The Houston District will establish a process for review of GATS payments over $500.00. Managers will use the GATS alerts function to review payments meeting the established threshold. The process will give the supervisor the authority to settle grievances, but must be reviewed by the Functional Manager (i.e. Managers, Post Office Operations, Customer Service Operations Managers, and Managers, Distribution Operations). The delegation of this authority will be limited to the review of Informal A

- 3 -

settlements exceeding $500 and will be the responsibility of the Functional Area Manager as stated above.

**Target Implementation Date**: October 31, 2018

**Responsible Official:**
David W. Camp- District Manager, Houston
Diane Parks- (A) Manager, Human Resources, Houston
Manoj A. Menon, Manager, Labor Relations, Houston

**Recommendation #4**: **The Houston District Manager initiate actions to recover the $71,385 in duplicate After 5 payments identified.**

**Management Response/Action Plan**: Management agrees with the recommendation. The Houston District will uphold the provision of the Debt Collection Act. Letters of Demand will be issued to all employees who were issued duplicate payments, and collection processes will be followed according the Postal regulations and the appropriate collective bargaining agreements.

**Target Implementation Date:** October 31, 2018

**Responsible Official:**
David W. Camp, District Manager, Houston
Chris Frier- Manager, Finance, Houston
Manoj A. Menon- Manager, Labor Relations, Houston

**Recommendation #5**: **The Houston District Manager provide Grievance and Arbitration Tracking System refresher training to supervisors regarding information and documentation practices**.

**Management Response/Action Plan**: Management agrees with the recommendation. The Houston District Manager will provide Grievance and Arbitration Tracking System refresher training to supervisors regarding information and documentation practices.

GATS refresher training will be provided to ensure supervisors and managers are aware of the appropriate entries and documentation needed for the proper maintenance of grievance and grievance related records, and will be documented on the District's Local Training forms.

Since the release of the draft report, the Houston District web page was updated with information on the proper process of paying employees for delivering mail after 5 p.m. and internal audits of this payment process has been initiated.

The Houston District will establish a process for ongoing GATS refresher training for supervisors and managers in the Houston District.

- 4 -

**Target Implementation Date:** October 31, 2018

**Responsible Official:**
David W. Camp, District Manager, Houston
Manoj A. Menon, Manager, Labor Relations, Houston

*[signature: Mj Menon]*
for
David W. Camp
District Manager, Houston

*[signature]*  ACTING MANAGER - CORPORATE ACCTG
Cara Greene      on behalf of Cara Greene  8/31/18
Acting Vice President, Controller

*[signature]*
Doug A. Tulino
Vice President, Labor Relations

cc: Sally K. Haring
    Manager, Corporate Audit Response Management



OFFICE OF
INSPECTOR
GENERAL
UNITED STATES POSTAL SERVICE

Contact us via our Hotline and FOIA forms.
Follow us on social networks.
Stay informed.

1735 North Lynn Street
Arlington, VA  22209-2020
(703) 248-2100

